NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
**ROBERT FARINA,**                  :
**o/b/o NALANI FARINA,**            :
                                    :   Civil Action No. 14-2609
        *Plaintiff,*                :
                                    :
v.                                  :
                                    :   OPINION
**CAROLYN W. COLVIN,**              :
**Acting Commissioner of Social Security,** :
                                    :
        *Defendant.*                :
_____ :

**ARLEO, UNITED STATES DISTRICT JUDGE.**

Before the Court is Robert Farina o/b/o Nalani Farina's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for disabled child's insurance benefits and supplemental security income ("SSI"). Plaintiff argues that her mental health problems prevent her from obtaining employment. For the reasons set forth in this Opinion, the Court finds that the Commissioner's decision is supported by substantial evidence, and therefore must be **AFFIRMED**.

**I.  STANDARD OF REVIEW AND APPLICABLE LAW**

  **A. Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).

Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate."  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review."  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence.  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age."  Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).

**B. The Five-Step Disability Test**

A claimant is eligible for child's insurance benefits if he or she is eighteen years old or older and has a disability that began before he or she became twenty-two years old.  20 C.F.R. § 404.350(a)(5).

In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment or its equivalent. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner must ask at step four whether the claimant has residual functional capacity ("RFC") such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364

F.3d at 503.  If so, the claim for benefits must be denied.  The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Under 42 U.S.C. § 405(g) and Third Circuit precedent, this Court is permitted to "affirm, modify, or reverse the [Commissioner's] decision with or without a remand to the [Commissioner] for a rehearing."  Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984); Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 865-66 (3d Cir. 2007).  While an outright reversal with an order to award benefits is permissible in the presence of a fully developed record containing substantial evidence that the claimant is disabled, the Court must order a remand whenever the record is incomplete or lacks substantial evidence to justify a conclusive finding at one or more of the five steps in the sequential analysis.  See Podedworny, 745 F.2d at 221-22.

## II.   BACKGROUND

### A.  Procedural History

This case arises out of Plaintiff's application for SSI filed on January 12, 2009.  The claim was denied initially on July 15, 2009 and upon reconsideration on March 11, 2010.  Dk. No. 8, Tr. 123-27, 132-33.  On August 21, 2012, the Honorable Donna A. Krappa (the "ALJ") issued an opinion in which she concluded Plaintiff was not disabled.  Tr. 19-34.  The Appeals Council affirmed the ALJ's Opinion.  Tr. 1-6.  The Commissioner's decision was appealed to this Court on April 24, 2014.  Dkt. No. 1, Compl.

### B.  Factual Background

Plaintiff is a twenty-four year-old woman who alleged in her application for SSI that she had been disabled since November 15, 2007.  Tr. 210.  She alleges only mental impairments.  In an undated disability report, she asserted that she suffers from attention deficit hyperactivity

4

disorder ("ADHD"), dysthymia, and depression. Tr. 225. At her hearing with the ALJ, she also alleged that she has post-traumatic stress disorder ("PTSD") and addictions issues with marijuana. Tr. 68, 81. Aside from a brief period of part-time employment at a local mall and a restaurant, Plaintiff does not document any work history. Tr. 224-25, 289.

Plaintiff is unmarried and lives with her father. Tr. 70. She will help out minimally around the house but will frequently watch television, occasionally use the computer, and will visit a friend every few days. Tr. 264. She was expelled from her high school and completed her education at a behavior disabilities school that provided supplementary educational aids. Tr. 71, 92-93, 360, 377. At school, she underwent several psychological examinations. Tr. 321-329. These examinations showed symptoms of social anxiety and emotional issues, but generally revealed cognitive and intellectual capabilities in the average range. Id. Plaintiff testified that she often has difficulty with her emotions in social settings and at work. She stated that she often cries, has difficulty sleeping, difficulty focusing, and generally believes that people do not like her. Tr. 72-73, 281. She asserts that these issues stem from the loss of her mother to a drug overdose at a young age and the physical abuse she suffered at the hands of previous boyfriends. Tr. 268.

Plaintiff has received evaluations from several psychologists over the years. She was diagnosed with bipolar disorder, depression, PTSD, ADHD, social phobia and a marijuana dependence. Tr. 567, 756. Plaintiff was evaluated by Dr. Mark Faber, whose records consist of a few handwritten pages documenting three to four visits over four years. See Tr. 552-55, 593-96, 644-46, 731. Dr. Faber found that Plaintiff demonstrated strong symptoms of depression. Tr. 597. Plaintiff was also evaluated by Wendy Donnelly, LCSW on numerous occasions from 2006 to 2011. Tr. 789. While Ms. Donnelly noted that Plaintiff's anxiety issues impacted her ability to maintain consistency in the workplace, her closing evaluation statement noted Plaintiff's recent

positive outlook and strong work ethic. Tr. 751, 789. Plaintiff underwent a consultative psychological evaluation with Marc Friedman, Ph.D., who observed Plaintiff's anxiety, depression, and use of marijuana. Tr. 745-46. Dr. Friedman noted that Plaintiff had borderline to low average intelligence range and was competent to handle funds without assistance. Tr. 746. He recommended Plaintiff begin taking antidepressant medication. Id.

Plaintiff has since started taking medicine for her psychological problems. Tr. 74, 577. During her latest evaluations from Mountainside Family Practice, Plaintiff expressed improvements in her mood while taking medication. Tr. 811. She explained that while she still felt anxiety and stress, she no longer experiences crying spells, depression, mood swings, personality changes, difficulty concentrating, sadness or suicidal thoughts. Tr. 814. She also explained that she enjoys painting, shopping, surfing the internet, and exercising with martial arts. Id.

**C. The ALJ's Decision**

The ALJ addressed steps one and two summarily. Plaintiff had not engaged in substantial gainful activity since November 15, 2007, the alleged onset date, and was younger than 22 years old as of that date. Tr. 25. She was also found to suffer from the following severe impairments: ADHD, conduct disorder, dysthymia, PTSD, and marijuana abuse. Tr. 25.

At step three, The ALJ analyzed the severity of the impairments and found that none of them, together or singly, met or medically equaled the severity of a listed impairment. Tr. 25-26. In reaching this determination, the ALJ considered Plaintiff's mental impairments against the criteria in Paragraphs B and C for Listings 12.02 (organic mental disorders), 12.04 (affective disorders), 12.06 (anxiety related disorders), and 12.09 (substance addiction disorders) in 20

C.F.R. Part 404, Subpart P, Appendix 1. Id. The ALJ found that Plaintiff did not satisfy the paragraphs' criteria. Tr. 26.

Under step four, the ALJ determined that Plaintiff had no limitations on her residual functioning capacity to perform exertional demands but limited Plaintiff's work capabilities based on mental demands. Tr. 26. The ALJ limited Plaintiff to the performance of jobs "that are unskilled and repetitive; that are low stress (that is, these jobs require only an occasional change in the work setting during the workday, only an occasional change in decision making required during the workday, and, if production based, production is monitored at the end of the day rather than consistently through it); and that require only occasional contact with supervisors, and co-workers, but not contact with the general public." Tr. 27. In making the RFC determination, the ALJ considered Plaintiff's medical history, treating physician's opinions, the opinions of other doctors, Plaintiff's own testimony, and the testimony of her father. Tr. 27-32.

The ALJ then considered Plaintiff's vocation background under 20 C.F.R. § 404.1560, et seq. Tr. 32. The ALJ determined that Plaintiff had no past relevant work, was classified as a "younger individual" on the alleged onset date, had a high school education, could communicate in English, and had no transferrable job skills. Id.

Finally, the ALJ considered whether there were sufficient jobs in the national economy that Plaintiff could perform. She credited the Vocational Expert's ("VE") opinion, and found there were sufficient employment opportunities. Tr. 32-33.

### III. Analysis

Plaintiff challenges the ALJ's findings on the grounds that the ALJ (1) dismissed Plaintiff's history of abuse and emotional issues and improperly evaluated medical records; (2) improperly

7

evaluated the VE's testimony; and (3) was biased against Plaintiff.[1] The Court finds the ALJ's findings are supported by substantial evidence.

### A. Evaluation of Emotional History and Medical Records

Plaintiff argues that the ALJ improperly dismissed evidence of her personal history and of the severity of her mental impairments. Dkt. No. 12, Certification of Kathie Hartt ("Pl.'s Br."), at 3. Plaintiff also argues that the ALJ gave too little weight Dr. Faber's medical opinion. Id. The Court disagrees.

In reaching her decision, an ALJ must consider all pertinent evidence and explain her reasons for discounting contradictory evidence. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121-22 (3d Cir. 2000). Where objective medical evidence does not comport with a claimant's testimony, the ALJ may decline to accord substantial credibility to the claimant. See Green v. Comm'r of Soc. Sec., No. 11-2145, 2012 WL 1964462, at *6 (D.N.J. May 31, 2012).

The ALJ considered Plaintiff's personal history and mental impairments but concluded that her statements concerning the severity of her impairments were not credible. Tr. 28. The conclusion is supported by substantial evidence. The ALJ addressed Plaintiff's testimony which indicated that she often suffered from bouts of depression and social anxiety, had emotional difficulties at work, and had difficulty concentrating in school. Tr. 27, 29. The ALJ also noted several past incidents of violence by Plaintiff's boyfriend and the anxiety Plaintiff suffered as a result. Tr. 28. However, the ALJ pointed to medical evidence that contradicted Plaintiff's statements of severity. See Tr. 28-31. The ALJ noted that the psychological evaluation conducted

---

[1] Plaintiff also alleges that, during her initial determinations, the Social Security Administration investigated the wrong person before realizing the mistake and investigating Plaintiff. Pl.'s Br. at 2-3. Even if true, the error was harmless. It did not impact the ALJ's final decision, which evaluated anew the evidence in the record and was not bound by the initial determination.

through the Board of Education placed Plaintiff in the upper end of the average range of intellectual ability and the average range of cognitive ability. Tr. 29, 515. The ALJ also noted Dr. Friedman's observations that Plaintiff spoke in clear, complete sentences and had an intelligence level in the borderline to lower average range. Tr. 29-30, 566. Lastly, the ALJ highlighted Mountainside Family Practice's reports, which indicated that Plaintiff expressed improvements in her mood due to medication and did not report any crying spells, depression, mood swings, or personality changes. Tr. 31-32, 811, 814. Because the ALJ considered evidence of Plaintiff's personal and medical history, and because she explained her reasons for discounting contradictory testimony, the decision is supported by substantial evidence.

The ALJ likewise explained her reason for giving "little weight" to the opinion of Dr. Faber. Tr. 31. "[A] treating physician's opinion is accorded controlling weight only if the ALJ finds that the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [in the] case record.'" Smith v. Astrue, 359 F. App'x 313, 316 (3d Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)); see also Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991) (explaining that an ALJ may reject the opinion of a treating physician if it is "conclusory and unsupported by the medical evidence."). The ALJ may consider the length of the treatment relationship and frequency of examinations when determining the weight of a medical opinion. 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ stated that Dr. Faber's findings indicated that Plaintiff suffered from severe emotional outburst, anxiety, and depression and was unable "'to meet competitive standards' in regard to mental abilities and aptitudes needed to do even unskilled work." Tr. 28-30. The ALJ found, however, that Dr. Faber's opinion "is of little value." Tr. 31. She reasoned that Dr. Faber only met with Plaintiff four times over four years, took few notes, did not have a "longitudinal

9

treatment history" with the Plaintiff, and provided no evidence that he had any special vocational training to assess competitive standards of various types of work. Id. The ALJ decided that Dr. Faber's opinion that Plaintiff could not perform unskilled work should be accorded little weight. Id. Thus, the Court finds that the ALJ's reasoning for giving Dr. Faber's opinion less weight was supported by substantial evidence.

### B. Evaluation of Vocation Expert's Testimony

Plaintiff also argues that the ALJ did not ask the VE appropriate hypotheticals during the hearing and did not properly evaluate the VE's testimony. Pl.'s Br. at 2. The Court disagrees.

The ALJ's questions posed to the VE must "accurately portray the claimant's physical and mental limitations." Schonewolf v. Callahan, 972 F. Supp. 277, 289 (D.N.J. 1997). The ALJ does not have to take into account every limitation alleged by the claimant, however. See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (internal citation omitted). Rather, the ALJ must convey only the claimant's credibly established limitations. See id.

Here, the ALJ's hypotheticals to the VE accurately portrayed Plaintiff's credibly established mental limitations. The ALJ's first hypothetical asked if opportunities were available for a person who can only perform jobs that are unskilled and repetitive, low stress, and require only occasional contact with supervisors and co-workers but no contact with the general public. Tr. 396. The VE responded that the person would be able to perform four occupations: microfilm mounter (DOT 208.695-011), sorter (DOT 573.687-034), ticketer (DOT 229.587-018), and a produce weigher (DOT 299.597-010). Tr. 407. The ALJ then determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles. Tr. 33. These limitations accurately reflect Plaintiff's final RFC assessment, and the ALJ reasonably credited the VE's responses.

Plaintiff argues, however, that the hypothetical was inaccurate because she is unable to concentrate for one third of the working day and cannot handle any stress.  Plaintiff asserts that the VE and Dr. Faber confirmed as much.  As to the VE, Plaintiff confuses Mr. Meola's hypothetical answer with a conclusion about Plaintiff's mental limitations.  In response to a hypothetical, the VE testified that a person who is unable to handle stress or concentrate for a third of the day could not hold a competitive job. Tr. 45.  The VE did not testify that Plaintiff suffered from such a limitation.  Nor did the ALJ have to accept such a limitation, given that Plaintiff did not credibly establish it in light of substantial medical evidence to the contrary.  As to Dr. Faber, Plaintiff correctly asserts that Dr. Faber found such a limitation, but, as explained above, the ALJ reasonably gave little weight to his findings.  The ALJ's decision to not consider the limitation was therefore supported by substantial evidence.

### C. Allegations of Bias

The Court finds absolutely no basis upon which to sustain Plaintiff's claim of bias against the ALJ.  Plaintiff asserts the conclusory allegation that the ALJ was "determined" to deny her benefits and points as evidence to the ALJ's use of a VE during the hearing.  Pl.'s Br. at 2; Pl.'s Reply at 23-24.  The use of a VE to provide evidence of occupational information at a hearing before an ALJ is discretionary and entirely common.  See Lopez v. Comm'r of Soc. Sec., 270 F. App'x 119, 123 (3d Cir. 2008) ("[T]he decision to use a vocational expert is at the discretion of the ALJ."); SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000).  Moreover, the ALJ evaluated the VE's findings and found them to be consistent with the Dictionary of Occupational Titles.  The ALJ then considered the VE findings in conjunction with Plaintiff's RFC and vocation background under 20 C.F.R. § 404.1560, et seq.  Thus, there is no evidence to suggest, or reason to conclude that, the ALJ's determination was even remotely grounded in some level of bias against Plaintiff.

## IV. CONCLUSION

Because the Court finds that the ALJ's decision is supported by substantial evidence, the Commissioner's disability determination is **AFFIRMED**. An appropriate order will follow.


Date: September 30, 2015                             */s/ Madeline Cox Arleo            .*
                                                                          **Hon. Madeline Cox Arleo**
                                                                          **UNITED STATES DISTRICT JUDGE**