NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NALANI FARINA,** *Plaintiff,* v. **COMMISSIONER OF SOCIAL SECURITY** *Defendant.* | Civil Action No. 14-2609 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE.**

Before the Court is Plaintiff Nalani Farina's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for disabled child's insurance benefits and supplemental security income ("SSI"). For the reasons set forth in this Opinion, the Court finds that the Commissioner's decision is supported by substantial evidence, and therefore must be **AFFIRMED**.

**I. STANDARD OF REVIEW AND APPLICABLE LAW**

**A. Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial

evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).

### B. The Five-Step Disability Test

A claimant is eligible for child's insurance benefits if he or she is eighteen years old or older and has a disability that began before he or she became twenty-two years old. 20 C.F.R. § 404.350(a)(5).

In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial

2

gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment or its equivalent. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established, and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner must ask at step four whether the claimant has residual functional capacity ("RFC") such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. If so, the claim for benefits must be denied. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## II. BACKGROUND

### A. Procedural History

This case arises out of Plaintiff's application for supplemental security income and disabled child's insurance benefits[1] filed on January 12, 2009. The claim was denied initially on July 15, 2009 and upon reconsideration on March 11, 2010. Tr. 123-27, 132-33, ECF No. 8. On August 21, 2012, the Honorable Donna A. Krappa (the "ALJ") issued an opinion in which she concluded Plaintiff was not disabled. Tr. 19-34. The Appeals Council affirmed the ALJ's Opinion. Tr. 1-6.

On April 24, 2014, Plaintiff's father, Robert Farina, filed a complaint in the United States District Court on behalf of Plaintiff, pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), for review of the Commissioner's decision. See Compl., ECF No. 1. On September 30, 2015, the Court entered an order and opinion affirming the Commissioner, finding that substantial evidence supported the ALJ's decision. ECF Nos. 17, 18.

On October 21, 2015, Plaintiff appealed this Court's decision. On December 6, 2016, the United States Court of Appeals for the Third Circuit vacated this Court's order and remanded the matter for further consideration, finding that Mr. Farina, a non-lawyer, could not represent his minor child. The Third Circuit did not reach the merits of the appeal.

On August 17, 2017, Plaintiff requested pro-bono counsel. ECF No. 33. On September 17, 2019, the Court granted Plaintiff's motion and pro bono counsel was appointed. ECF No. 38. On February 11, 2020, the Court granted Plaintiff's motion to amend the complaint naming Nalani Farina, who long ago reached the age of majority, as the sole Plaintiff. ECF No. 54.

This Motion followed.

---

[1] Disabled child's insurance benefits are paid to the qualified "child . . . of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual," if, inter alia, the child is 18 years of age, or older, and has a disability that began before she turned 22 years old. 42 U.S.C. § 402(d)(1)(B)(ii); see also 20 C.F.R. § 404.350(a)(5).

**B. Factual Background**

The Court's prior Opinion in this matter contains a lengthy recitation of the operative facts. See ECF No. 17 ("2015 Affirmance"). The operative facts in the underlying record remain unchanged. Therefore, the Court herein reincorporates that statement of facts.

**C. The ALJ's Decision**

The ALJ determined that Plaintiff was not disabled at step five of the five-step disability analysis. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since November 15, 2007, the alleged onset date, and was younger than 22 years old as of that date. Tr. 25. At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: ADHD, conduct disorder, dysthymia, PTSD, and marijuana abuse. Tr. 25.

At step three, The ALJ analyzed the severity of the impairments and found that none of them, together or individually, met or medically equaled the severity of a listed impairment. Tr. 25-26. In reaching this determination, the ALJ considered Plaintiff's mental impairments against the criteria in Paragraphs B and C for Listings 12.02 (organic mental disorders), 12.04 (affective disorders), 12.06 (anxiety related disorders), and 12.09 (substance addiction disorders) in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. The ALJ found that Plaintiff did not satisfy the paragraphs' criteria. Tr. 26.

Under step four, the ALJ determined that Plaintiff had no limitations on her residual functioning capacity to perform exertional demands but limited Plaintiff's work capabilities based on mental demands. Tr. 26. The ALJ limited Plaintiff to the performance of jobs "that are unskilled and repetitive; that are low stress (that is, these jobs require only an occasional change in the work setting during the workday, only an occasional change in decision making required during the workday, and, if production based, production is monitored at the end of the day rather

than consistently through it); and that require only occasional contact with supervisors, and co-workers, but not contact with the general public." Tr. 27. In making the RFC determination, the ALJ considered Plaintiff's medical history, her treating physician's opinions, the opinions of other doctors, Plaintiff's own testimony, and the testimony of her father. Tr. 27-32.

The ALJ then considered Plaintiff's vocational background under 20 C.F.R. § 404.1560, et seq. Tr. 32. The ALJ determined that Plaintiff had no past relevant work, was classified as a "younger individual" on the alleged onset date, had a high school education, could communicate in English, and had no transferrable job skills. Id.

Finally, the ALJ considered whether there were sufficient jobs in the national economy that Plaintiff could perform. She credited the Vocational Expert's ("VE") opinion and found there were sufficient employment opportunities. Tr. 32-33.

### III. ANALYSIS

Plaintiff challenges the ALJ's findings on the grounds that the ALJ: (1) misunderstood Plaintiff's care and incorrectly analyzed Plaintiff's mental health treatment at the Family Service League; and (2) failed to properly credit Dr. Faber's opinion. The Court finds the ALJ's findings giving Dr. Farber's opinion less weight are supported by substantial evidence.

#### A. The ALJ's Analysis of Plaintiff's Treatment at the Family Service League

Plaintiff first argues that the ALJ's decision to give less weight to Dr. Faber's opinion does not properly account for his "extensive history with Plaintiff." Motion at 18. Specifically, Plaintiff posits a theory that Dr. Faber collaborated with and closely supervised Ms. Donnelly, a licensed social worker at the Family Service League, while Plaintiff was meeting with her. However, the record below simply does not show Dr. Faber had as extensive a treatment record as Plaintiff suggests. Plaintiff posits a theory that Dr. Faber collaborated with and closely supervised

6

Ms. Donnelly, a licensed social worker at the Family Service League, while Plaintiff was meeting with her. However, the record below simply does not show Dr. Faber had as extensive a treatment record as Plaintiff suggests.

For example, in support of her argument that Dr. Faber communicated with Ms. Donnelly about Plaintiff's treatment, Plaintiff cites a 2007 evaluation form and two 2005 treatment plans by different clinicians. See Motion at 18 (citing Tr. 553, 660, 664). However, these record items are silent as to whether the clinician preparing the form collaborated with Dr. Faber. Additionally, Plaintiff points to a 2009 communication to Ms. Donnelly, which notes that Dr. Faber requested Ms. Donnelly speak with Plaintiff. Motion at 18 (citing Tr. 670). Contrary to Plaintiff's characterization, this document does not show Dr. Faber was collaborating with Ms. Donnelly on the substance of Plaintiff's treatment, nor that they were "working closely" on Plaintiff's care. Instead, this document states that Plaintiff had cancelled two appointment with Dr. Faber and "Dr. Faber does not want to reschedule at this time, he asked that [Ms. Donnelly] speak with them first." Tr. 670.

Plaintiff additionally argues that the ALJ erred in analyzing Plaintiff's record of care from the Family Service League because "Ms. Donnelly's interactions and sessions with Plaintiff should have been considered as relevant evidence" to demonstrate disability. Motion at 19-20. However, the ALJ extensively considered Ms. Donnelly's treatment records. The ALJ specifically recognized that Plaintiff "commenced therapy at Family Service League in January 2005" and "began treatment with Wendy Donnelley, L.S.W. in May 2006." Tr. 28. The ALJ noted that Plaintiff continued care with Ms. Donnelly after 2011 when she left for private practice. Tr. 31. The ALJ acknowledged and summarized a letter from Ms. Donnelly explaining her care of Plaintiff, in which she mentioned that she was "one of the clinicians who worked with the Farina

7

family" at the Family Service League. Tr. 31 (citing Tr. 789). The ALJ reviewed these treatment records and concluded that "progress notes from therapy sessions between the claimant and Ms. Donnelly did not support a finding of disability." Id. (citing Tr. 652-53, 751, 786-88). Plaintiff has not pointed to anything in Ms. Donnelly's treatment notes that shows the ALJ's conclusion with respect to her disability determination was in error. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Therefore, the Court sees no reason to reverse that conclusion.

The Court is sympathetic to Plaintiff's generalized argument that the mental healthcare system in this country is often a patchwork of treatment and care is rendered sporadically. However, the Court agrees with Defendant that this point is immaterial to determining whether the record below supports the ALJ's RFC determination. An ALJ's RFC determination is an administrative finding, which is different from a pure medical opinion about a patient's mental health condition. See Social Security Ruling (SSR) 96-5p, 1996 WL 374183 (S.S.A.) (RFC is not a "medical issue[ ] regarding the nature and severity of an individual's impairment(s) but [is an] administrative finding[ ]"); see also Demaio v. Berryhill, No. 15-5187, 2017 WL 4618749, at *4 n.2 (D.N.J. Oct. 13, 2017) (Arleo, J.) ("To the extent Plaintiff infers that the RFC must be directly supported by a medical opinion, the Court agrees with Defendant that an ALJ is not required to base his RFC assessment on medical opinion because RFC is an administrative finding reserved to the ALJ."). The Court observes no error in the ALJ's review of the entire record of Plaintiff's mental health treatment nor in her RFC determination based on that record.

**B. The ALJ's Analysis of Dr. Faber's Opinion**

Plaintiff argues that the ALJ erred by failing to give Dr. Faber's opinion controlling weight. The Court disagrees and finds that the ALJ's holding that "Dr. Faber's opinion is of little value" is supported by substantial evidence.

This Court has previously opined on the ALJ's analysis of Dr. Faber's opinion and found that reasoning was supported by substantial evidence. See 2015 Affirmance at 9-10. The instant Motion presents no reason to reconsider that holding.

"[A] treating physician's opinion is accorded controlling weight only if the ALJ finds that the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [in the] case record.'" Smith v. Astrue, 359 F. App'x 313, 316 (3d Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)); see also Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991) (explaining that an ALJ may reject the opinion of a treating physician if it is "conclusory and unsupported by the medical evidence"). The ALJ may consider the length of the treatment relationship and frequency of examinations when determining the weight of a medical opinion. 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ provides several reasons for assigning "little value" to Dr. Faber's opinion. Specifically, the ALJ explained that: (1) there are only four treatment notes from Dr. Faber in the record; (2) Dr. Faber is not a vocational expert, so his conclusion that Plaintiff cannot meet the demands of competitive work is outside his expertise; and (3) treatment records from after Dr. Faber's opinion show that Plaintiff responded well to medication, which helped alleviate her symptoms. Tr. 31.

Each of these reasons is a valid consideration for the ALJ to factor into her analysis. Specifically, the length and nature of the treating relationship is one key factor to be analyzed with respect to treating source opinions. See 20 C.F.R. §§ 404.1527(c)(2)(i); 416.927(c)(2)(i)

("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Additionally, Dr. Faber's opinion about Plaintiff's inability to work is not dispositive of RFC analysis. See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (explaining that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). Finally, the record contains evidence supporting the ALJ's observation regarding Plaintiff's use of medication. See Tr. 811, 813 (showing Plaintiff was "[e]ducated regarding the importance of compliance with medication for its effectiveness" at an appointment).[2] Taken as a whole, it is clear that the ALJ's analysis is based on far more than a "mere scintilla" of record evidence. See Biestek v. Berryhill, 139 S. Ct. 1148 (2019).

Plaintiff argues that the ALJ was obligated to give Dr. Faber's opinion that Plaintiff could not work controlling weight, but this is incorrect. In making an RFC determination, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). "Although treating and examining physician opinions often deserve more weight" than other physicians, "the law is clear that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Id. (internal citations and quotation marks omitted). Here, the ALJ took Dr. Faber's opinion into consideration, but was not bound to that opinion as strictly as Plaintiff suggests.

---

[2] Plaintiff additionally argues that the ALJ impermissibly "speculated" that the use of the medication Celexa would improve Plaintiff's overall function and permit her to perform basic work functions. See Motion at 25. However, the ALJ may consider record evidence that shows a claimant responded positively to medication in making her RFC determination. See Sutherland v. Comm'r of Soc. Sec., 785 F. App'x 921, 927-28 (3d Cir. 2019) (holding "the ALJ's conclusion that Sutherland can return to work, even though it may require medical compliance, is supported by substantial evidence"). Here, there is record evidence that Plaintiff's symptoms improved while on medication. Tr. 811. Therefore, the ALJ properly considered that fact in her RFC analysis.

Moreover, Plaintiff focuses heavily on her undisputed diagnoses in an attempt to refute the ALJ's RFC determination. See Motion at 23-24. However, Plaintiff's diagnoses alone do not establish functional loss. Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 (3d Cir. 2007) ("In addition to the diagnoses, Salles was required to present evidence that these limitations significantly limited her ability to do basic work activities or impaired her capacity to cope with the [ ] demands of working."). The ALJ reviewed the findings of the consultative examiner, Marc Friedman, who did not dispute Plaintiff's diagnoses. Tr. 29-30. These findings were consistent with the ALJ's determination that, while Plaintiff is limited in some ways, she retains the capacity for some form of work (i.e., unskilled, repetitive, low-stress work with only occasional co-worker interaction and no interaction with the public).[3]

IV.  CONCLUSION

Because the Court finds that the ALJ's decision is supported by substantial evidence, the Commissioner's disability determination is **AFFIRMED**. An appropriate order will follow.


Date: May 12, 2021 /s/ *Madeline Cox Arleo* .
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**

---

[3] Plaintiff also argues the "ALJ failed to review Plaintiff's education records, in particular, Plaintiff's school attendance." Motion at 26. This argument too is insufficient to reconsider the ALJ's decision. "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), and here the ALJ's decision did consider record evidence that showed Plaintiff's challenges in academic settings and difficulty maintaining relationships with teachers, Tr. 31.

11